Dr. Milton MARGOLES, M. D.,
Plaintiff-Appellant,

v.

Alida JOHNS and The Journal Company,
Defendants-Appellees.

No. 76–1293.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 13, 1976.

Decided Dec. 5, 1978.*

* This appeal was originally decided by unreported order on October 14, 1976. See Circuit Rule 35. The court has subsequently decided to issue the decision as an opinion.

Wayne B. Giampietro, Chicago, Ill., for plaintiff-appellant.

James P. Brody, Milwaukee, Wis., for defendants-appellees.

Before CASTLE, Senior Circuit Judge, and CUMMINGS and PELL, Circuit Judges.

PELL, Circuit Judge.

This is an appeal from an order dismissing a diversity slander action for willful failure to obey the court's orders that the plaintiff produce documents and from an order denying relief from the judgment of dismissal. The issues on appeal are 1) whether the district court abused its discretion in dismissing the plaintiff's cause of action for failure to produce documents for discovery when that production was not refused but was only tardy, 2) whether the district court abused its discretion in refusing to hold a hearing in connection with the tardy production of documents for discovery and the sanctions to be applied therefor, and 3) whether the plaintiff's case may be dismissed for failure to produce documents when the tardy production was not his failure but that of his son, a nonparty to the case.

The pertinent facts are simply stated. On August 18, 1972, Dr. Milton Margoles filed a complaint charging that he was slandered by Alida Johns, a Milwaukee Sentinel reporter, in three telephone conversations on or about August 20 and September 2, 1970. Approximately twenty months later, after preliminary discovery and status conferences, the defendants by letter, pursuant to a course of discovery by stipulation without subpoenas or formal demands, listed documents the defendants wished produced for inspection and copying. Seven months later, on November 8, 1974, the defendants repeated the request for the documents. A letter of February 6, 1975 reminded plaintiff's counsel that the documents were still to be produced. At a pretrial conference on April 25, 1975, where plaintiff, his son Perry, and plaintiff's counsel were present, the plaintiff agreed to produce the requested documents. On April 29, 1975, the district court judge sent a summation letter, which the court treated as an order, reminding the plaintiff's counsel of the agreement to produce the documents. On August 15, 1975, at another pretrial conference, again attended by the plaintiff, his son Perry, and plaintiff's counsel, the court ordered plaintiff to produce the remaining documents by September 19, 1975.[1] The court again sent a written summation of the conference to counsel on August 19, 1975, and once again specified that plaintiff was to produce the documents by the designated date.

The plaintiff did not produce the documents at the designated time, and defendants moved for dismissal under Fed.R.Civ.P. 37(b)(2)(C) on October 23, 1975. On November 24, 1975, Perry Margoles and plaintiff's counsel delivered the requested documents to defense counsel, who received them under the understanding that the receipt of the documents was without prejudice to defendants' motion to dismiss. The court heard oral argument on the motion on January 5, 1976. Based upon all the information before the court, including affidavits, briefs and arguments of counsel, the court made

a specific finding that the failure to produce herein is willful, that it is prejudicial, that the matter sought to be produced is highly relevant and material to the case and it was and is within plaintiff's control, and that the failure to produce

---

1. Originally at the pretrial conference in August, the court had ordered production by September 6 "so as to permit ample time for defendants to review the documents to be produced and make final preparation for trial." At the request of counsel for the plaintiff the time was extended to September 19, 1975.

that and to comply with the procedural orders of the Court has been so prejudicial that the sanction [of dismissal] is appropriate.

Subsequently, the court signed a formal written order reciting that the failure of the plaintiff to obey the orders for discovery was willful, and a judgment of dismissal was entered.

Three weeks later, on January 29, 1976, Perry Margoles submitted a 40-page, sworn letter to the district court judge explaining why the documentary production was delayed and specifically denying that he willfully or consciously disobeyed the court's order of August 15, 1975. This affidavit recited numerous facts and details which plaintiff's son believed were unknown to the district court judge prior to his consideration of the defendants' motion. Perry Margoles emphasized that the tardiness in the production of the documents "in no way was intended by us and did not constitute refusal to produce them." After apologizing for any inconvenience caused by the delay of several months in the documentary production, Perry's letter asked for the opportunity to answer at a hearing any question the judge might have in order to establish "to your satisfaction that I have acted in good faith and did not wilfully or consciously disobey your order."

On February 4, 1976, plaintiff moved to vacate the order of dismissal. Two weeks later, the defendants filed a 50-page brief in opposition to the motion. On February 24, 1976, Perry wrote a second, 19-page sworn letter which delineated the issue before the court and set forth facts which he deemed to be sufficient to justify reinstatement of the case. The letter noted that

[w]hether I intended to disobey your order, rather than the fact that I tardily obeyed it, is the sole issue as to whether this case should have been dismissed. The record is devoid of any facts which would support a subjective judgment that my state of mind was to deliberately disobey your order . . . . Unlike other cases where the court was left with no alternative except to dismiss the case be-

cause a party had refused to produce documents sought for discovery by the opposing party, here there was no such refusal requiring your intervention.

The letter concluded by requesting that, consistent with the body of case law under Federal Rule 37(b)(2)(C), the judge reinstate the case and let justice be done according to its merits. Approximately one week later, plaintiff's counsel submitted a memorandum of law noting that the failure to produce the documents was not the fault of the plaintiff but of others.

On March 15, 1976, after reviewing the written record, including the various briefs and affidavits submitted in support of and in opposition to the Rule 60(b) motion, the district court found no reason to alter the order of dismissal that had earlier been entered and denied the motion. The court adhered to its view that the facts of the case demonstrated failures to comply with clear and repeated discovery orders on the part of the plaintiff and/or his agents and/or attorneys, that these failures were done either willfully or in conscious disregard of the court's specific decrees, and that there was ample justification for the entry of an order of dismissal under Fed.R.Civ.P. 37(b)(2)(C). Noting that another hearing on the matters had been requested, the court found that no additional oral argument or testimony would be appropriate.

I.

The appellant contends that the action of the district court ignored the admonition of this court that "where an alternative, less drastic, sanction would be just as effective it should be utilized." *Sapiro v. Hartford Ins. Co.,* 452 F.2d 215, 216 (7th Cir. 1972). After reviewing the record, we are left with some doubt as to whether other sanctions were considered. Thus, we are placed in a position similar to that of the Third Circuit in *In Re Professional Hockey Antitrust Litigation,* 531 F.2d 1188 (3d Cir. 1976), *rev'd sub nomine National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976). In that case, the Third Circuit carefully

reviewed the record and concluded that there was insufficient evidence to support a finding that M–GB's failure to file supplemental answers was in flagrant bad faith, willful or intentional. 531 F.2d at 1195. On appeal, however, the Supreme Court disapproved the lenity evidenced in the opinion of the Court of Appeals, and concluded that the district court did not abuse its discretion in concluding that the extreme sanction of dismissal was appropriate. Quite pointedly, the Supreme Court observed that the question was not whether the court or the Court of Appeals as an original matter would have dismissed the action but whether the district court abused its discretion in so doing. 427 U.S. at 641, 96 S.Ct. at 2780.

■ In the present case, the district court has twice found that the failures to produce were done willfully. Upon a review of the record, we think that these findings are supportable. In addition to the overall substantial time lapse during which the items in question were not produced, we note that shortly after plaintiff's counsel received the motion to dismiss (late October), he informed Perry Margoles "that it was imperative that he immediately produce all documents requested by defendants' counsel which had not yet been produced." The documents were delivered to plaintiff's counsel after the Damoclean threat on November 6 but were not actually put in the hands of opposing counsel until November 24. We are not unmindful of the numerous factors advanced both by the counsel and by Perry Margoles as being reasonable explanations for all stages of the delay. It would appear to us when facing a procedural deadline with which because of factors supposedly beyond control counsel are unable to comply that counsel would always be well advised to file *before* the crucial date a motion for an extension setting forth specifically the reasons for the request. While doing so here might not necessarily have made any difference in the district court's ultimate ruling, the fact remains that there was no communication with the court on the subject.

■ Under *National Hockey League, supra,* we are not free to substitute the exercise of our own discretion for that of the district court. Any effort on the part of this court to promote lenity rather than the harshness of an outright dismissal would undermine important objectives of Rule 37.

## II.

■ Rule 37(b)(2) states that if a party or a managing agent of a party fails to obey an order to provide or permit discovery, the court in which the action is pending may make such orders as are just, including dismissing the action. Assuming arguendo that there was no willful disobedience on the part of the plaintiff, the question arises whether the sanction directed at the plaintiff because of the willful disobedience of his son Perry is just. The record establishes that the deadline for the production of documents was personally communicated to the plaintiff, and his son, and that it was a current, not a long-prior forgotten, order. The record further establishes that the plaintiff had turned over to his son the basic task of producing the requested documents and that those tardily produced were in fact in Perry's possession.

In this case, however, the district court was amply justified in treating the failure of the son as that of the plaintiff. Since Perry was the "alter ego" of his father for purposes of documentary production, the court considers the failure of the non-party as that of the party. Cf. *Flaks v. Koegel,* 504 F.2d 702, 710 n.6 (2d Cir. 1974). Accordingly, it is unnecessary to determine whether the phrase "managing agent" as used in Rule 37 applies solely to corporate parties to the exclusion of individual parties.

## III.

■ The appellant contends that the failure of the district court to grant an evidentiary hearing wherein he would have had an opportunity to explain in person and fully why the production of documents did not come in a timely fashion was an abuse of

discretion. The record clearly establishes that prior to the ruling on the Rule 60(b) motion the district court was provided with voluminous factual detail relating to the reasons for the untimely compliance. Indeed, were the matter one for the original exercise of this court's discretion, a close question would have been presented on the basis of Perry's narrative account of the history of the case and of the untimely production as to whether some remedial sanction other than dismissal was just and appropriate. Upon a full review of the record, however, we are constrained to agree with the district court that a hearing at which further oral argument and testimony were given was not required. The briefs and affidavits fully recounted the circumstances surrounding the noncompliance with the court's order. Any further testimony would have been cumulative. We find no abuse of discretion in the district court's ruling that such a hearing was not appropriate.

For the reasons hereinbefore stated, the judgments dismissing the action as a Rule 37(b)(2)(C) sanction and denying the motion for relief under Rule 60(b) are affirmed.

Affirmed.