**OIL HEAT INSTITUTE OF OREGON, an Oregon Nonprofit Corporation, Plaintiff,**

v.

**NORTHWEST NATURAL GAS, an Oregon corporation, Defendant.**

No. 87–853–FR.

United States District Court, D. Oregon.

June 8, 1988.

John W. Stephens, Kim T. Buckley, Esler, Stephens & Buckley, Portland, Or., for plaintiff.

Barnes K. Ellis, Leslie K. Bonney, Stoel, Rives, Boley, Jones & Grey, Kirk Gibson, Northwest Natural Gas Co., Portland, Or., for defendant. .

## OPINION

FRYE, District Judge.

The matters before the court are:

1. Defendant's motion to compel and
2. Plaintiff's motion for an order compelling discovery.

## BACKGROUND

Plaintiff, Oil Heat Institute, (OHI) brings this action for injunctive relief under the Lanham Act of 1946, 15 U.S.C. § 1125(a), alleging that the promotional materials of defendant, Northwest Natural Gas, contain false descriptions and representations. OHI seeks an injunction to prevent Northwest Natural Gas from using these materials.

The materials alleged in the complaint to be false purport to compare "alleged positive features of natural gas with the alleged negative features of home heating oil used by residential customers." Amended Complaint, ¶ 4. The alleged false representations describe or represent average warranty, routine maintenance, delivery system, cleanliness, maintenance, service, storage, delivery and pricing.

## OHI'S MOTION TO COMPEL

Northwest Natural Gas moves this court to compel OHI to respond to interrogatories as follows:

1. Identify each member of the OIL Heat Institute that in any manner sells, distributes or maintains natural gas equipment;
2. Identify any members ... that utilize ... the oil prices published by the Energy Information Administration to price their respective products, including the exact manner in which said information is utilized;
3. Identify the number of complaints received by each member of OHI from June 1986 through June 1987 that concerns odor emanating from an oil furnace or tank;
4. Identify the number of complaints ... as above ... concerning soot emanating from an oil furnace;

5. Identify the number of complaints ... as above ... concerning leaking of oil storage tanks; and

6. Describe how each member of OHI determines the prices at which that particular member will sell heating oil.

OHI answered each of the interrogatories above as follows: "Plaintiff does not maintain this information."

OHI explains in response to Northwest Natural Gas' motion to compel that OHI is a non-profit trade organization consisting of 103 heating oil dealers and 24 appliance service companies and tank installers. Under OHI's bylaws the only duty that members have is to pay dues. OHI explains that it has produced for Northwest Natural Gas copies of all of the documents in its possession, custody or control which includes its membership list along with a description of the kind of business OHI understands each member to conduct, as well as its bylaws and membership application. OHI argues that it is not required to produce any information that is solely within the custody or control of the individual members and not readily available to the organization. Further, OHI argues that the pricing information requested is "sensitive" information and not relevant to OHI's claims against Northwest Natural Gas.

Fed.R.Civ.P. 34(a) permits discovery of documents which are in the "possession, custody or control" of a plaintiff. Inspection can be had if the party to whom the request is made has the legal right to obtain the document, even if the party has no copy in its possession. 8 Wright & Miller, *Federal Practice & Procedure*, § 2210 at 621.

■ OHI does not have possession or custody of the requested items. The only issue is whether OHI should be deemed to have control of the requested items because it represents the member organizations. While there are circumstances in which a party will be deemed to have control of documents such that they must produce them, the court concludes this is not such a case. *See e.g. Margoles v. Johns*, 587 F.2d 885 (7th Cir.1978) (plaintiff's son deemed alter ego of plaintiff where plaintiff had turned over the task of producing the documents to the son.) There is no evidence here that OHI has any legal right to documents that belong to the member organizations. In addition, there is no evidence that Northwest Natural Gas cannot obtain the requested information directly from the member organizations.

Northwest Natural Gas' motion to compel is denied.

## OHI'S MOTION TO COMPEL

OHI moves the court to compel Northwest Natural Gas to produce documents which fall into two general categories: 1) customer service department manuals, and 2) the agreements by which Northwest Natural Gas and its major supplier, Northwest Pipeline Corp., purchase gas.

### 1. *Customer service department manuals*

■ Northwest Natural Gas in its response concedes that the documents are relevant and agrees to produce those portions of the manuals that are relevant to routine maintenance, service and cleanliness. OHI in reply states that while OHI has confidence that Northwest Natural Gas' counsel will make a good faith attempt to produce those portions of the customer service department manuals he says is relevant, OHI prefers its counsel to review manuals to determine for himself which portions are relevant. (Pl. Reply Memorandum in Support of Motion to Compel p. 2.)

Northwest Natural Gas explains that the manuals contain proprietary and confidential information as well as information that is in no way relevant to the subject matter of this action.

The court will allow counsel for OHI to review the customer service department manuals subject to a protective order. Counsel for the parties are to attempt to agree upon the terms of an appropriate protective order.

### 2. *The agreements*

OHI seeks all documents by which the principal supplier of Northwest Natural Gas purchases gas. OHI contends that the agreements will show that the prices of the gas it purchases and sells are directly influenced by oil prices. OHI explains that this information is relevant to disprove Northwest Natural Gas' assertion in its brochures that oil prices are "subject to foreign influence" while natural gas prices are regulated by the Oregon Public Utility Commission.

Northwest Natural Gas has agreed to produce copies of agreements with Northwest Pipeline which are public records. Northwest Natural Gas asserts that there are no agreements between Northwest Pipeline and West Coast Transmission as requested in the third request for production.

Northwest Natural Gas argues that the other agreements requested by OHI are not relevant and contain confidential information.

OHI explains that the documents requested are relevant as to the price paid by Northwest Natural Gas for gas and not as to the price paid by Northwest Natural Gas' customers for gas. Northwest Natural Gas explains that the price it pays for gas is only one factor considered by the OPUC in setting its prices. Further, Northwest Natural Gas asserts that the cost of gas is highly confidential and constitutes trade secrets.

In its reply, OHI asserts that the information sought has been produced in a number of other cases without a claim of confidentiality. OHI states that "according to its last general rate case (1986), defendant purchases over 90% of its gas from Northwest Pipeline under Northwest Pipeline's Rate Schedule ODI-1. These rates are published by Northwest Pipeline and are available to anyone. Second, defendant reports its gas costs every time it files its FERC Form No. 2 Annual Report with PUC and its Form 10K with the SEC. (Defendant's gas costs in 1987 were $172,470,-300 according to its Annual Report to its shareholders ...)" Pl. reply memorandum p. 3.

OHI contends that there is evidence that the prices at which Northwest Natural Gas purchases gas are determined in large part by formulae that are based on oil prices. OHI explains that it needs the additional agreements "in an effort to fill out the discovery it has already conducted." Pl. reply memorandum p. 5.

It appears to the court that OHI has been able to obtain a substantial amount of information relating to the cost of gas purchases by Northwest Natural Gas. It is not clear from the record what OHI will gain by securing further discovery as to gas costs. On the other hand, Northwest Natural Gas' assertions that the agreements are highly confidential is questionable if Northwest Natural Gas has in fact produced this information before.

This court concludes that Northwest Natural Gas shall produce data or records as to gas costs which have heretofore been produced in prior litigation and/or made a part of the public record.